<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHIRE LABORATORIES, INC., : | |
| Plaintiff, : | |
| : | Civ. Action No. 06-2266 (SRC) |
| v. : | |
| : | **OPINION** |
| COREPHARMA, LLC, : | |
| Defendant. : | |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before the Court on the motion for summary judgment, pursuant to FED. R. CIV. P. 56, filed by Defendant Corepharma, LLC ("Corepharma") (Docket Entry No. 271). In this Hatch-Waxman dispute over carbamazepine products, Corepharma moves for summary judgment that its product does not infringe Shire's U.S. Patent No. 5,912,013. For the reasons stated below, Corepharma's motion for summary judgment will be granted.

## BACKGROUND

Briefly, Shire Laboratories, Inc. ("Shire") owns U.S. Patent Nos. 5,326,570 (the "'570 patent") and 5,912,013 (the "'013 patent"), which are directed to drug delivery systems and treatment methods using carbamazepine. On February 1, 2006, Corepharma filed ANDA No. 78-159, seeking approval from the FDA to engage in the manufacture and sale of certain carbamazepine products. On March 31, 2006, Corepharma sent Shire the Notice Letter required by the Hatch-Waxman Act. Shire requested samples of the ANDA products and, on April 25, 2006, Corepharma provided Shire with 200 capsules of each of the three ANDA products, as

well as with portions of the ANDA.  On May 17, 2006, Shire responded by filing the Complaint in this case, alleging infringement of both the '570 and '013 patents.  Shire served the Complaint on Corepharma on August 31, 2006 and, on the very next day, filed an Amended Complaint which did not include a claim for infringement of the '013 patent.  Corepharma answered and included a counterclaim for declaratory judgment of noninfringement of the '013 patent.

On December 1, 2006, Corepharma moved for judgment on the pleadings of noninfringement of the '013 patent.  On December 15, 2006, Shire cross-moved to dismiss Corepharma's second counterclaim, contending that there was no justiciable case or controversy over the '013 patent and that this Court thus lacked subject matter jurisdiction.  Shire argued:

> Corepharma's effort to obtain subject matter jurisdiction over its second counterclaim cloaks its strategy to market its drug product more quickly than would be possible without such a finding.  It is improper for Corepharma to pursue such a strategy to gain a 'tactical business advantage' through the Declaratory Judgment Act.  Further, use of this suit as a vehicle to seek a declaratory judgment of noninfringement of a patent around which no controversy exists would be a misuse of this Court's time and resources.

(Pl.'s Br., Docket Entry No. 34-2 at 2.)  Shire explained that, when it filed the Amended Complaint, which withdrew all claims regarding the '013 patent, "Shire divested this Court of subject matter jurisdiction over the '013 patent."  (Id. at 10.)

In its reply brief, Shire stated:

> Shire further assured Corepharma [] that infringement of the '013 patent was no longer at issue – Shire repeated its statements of noninfringement in its Reply, Brief in support of this Motion, Plaintiff's Brief in Opposition to Defendant's Motion for Judgment on the Pleadings, and in communications between counsel.  These facts must not be ignored.
>
> . . .
>
> In addition to Shire's representations of noninfringement made before this Court,

2

> Shire has provided Corepharma with an unconditional covenant not to sue. Such a covenant is, on its own, sufficient to moot a patent-based declaratory judgment action.

(Pl.'s Reply Br., Docket Entry No. 51 at 1-2.) Shire stated that it provided Corepharma with the following covenant:

> [Shire] unconditionally represents, stipulates, agrees and covenants that it will not sue Corepharma [] for infringement, or otherwise assert, enforce, or hold Corepharma liable for infringement of Shire's U.S. Patent No. 5,912,013 based on the importation, use, sale, or offer for sale of the extended-release carbamazepine capsules that are the subject of and described in Corepharma's ANDA 78-159 as disclosed to Shire as of September 1, 2006. This disclosure is limited to the materials sent by Corepharma to Shire under a cover letter dated April 25, 2006, as well as Corepharma's Notice of Patent Certification with attachment, dated March 30, 2006.

(Id. at 9-10). The materials sent by Corepharma to Shire under a cover letter dated April 25, 2006 included 600 sample capsules of the ANDA products. (Chettih Decl. Ex. H.)

On February 26, 2007, this Court held oral argument on the motion to dismiss. This Court conducted the following colloquy with Shire's counsel on the meaning and significance of the covenant not to sue:

> The Court:   But you're not really representing that you will never sue on this patent. What you're representing is, as I understand it, and please correct me if I'm wrong –
>
> Mr. Haug:    Sure.
>
> The Court:   – that the information disclosed in defendant's ANDA, which presumably should be all the information needed to demonstrate, A, how the composition is going to be made, and how the pharmaceutical is going to be administered, I gather, based upon your analysis would not infringe the '013 patent and, therefore, you would not sue based upon anything disclosed in defendant's ANDA. Is that correct?
>
> Mr. Haug:    It is correct as long as we are freeze framing the ANDA as of the

3

> time we got the information.  So, with respect to the information that was provided to Shire by Corepharma from the ANDA, which is a description of the product, together with samples that they gave Shire, that product, we will never sue on with respect to that product.  Now, if, if Corepharma for some reason decided to change the product in a way that would be relevant to the '013 patent, then we may have to consider whether that infringes, that new changed product infringes or not.

(February 27, 2007 Hearing Tr. at 11:3-24.)

After oral argument, this Court granted Shire's motion, dismissing the second counterclaim for lack of subject matter jurisdiction and denying the motion for judgment on the pleadings as moot.

In May of 2007, Corepharma first moved for summary judgment of noninfringement of the '570 patent.  This Court determined that claim construction was required and scheduled a Markman proceeding.  On March 26, 2008, this Court issued its decision on claim construction.

On April 1, 2008, the Federal Circuit issued its decision in Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd., 527 F.3d 1278 (Fed. Cir. 2008).  On May 23, 2008, Corepharma moved to vacate this Court's Order dismissing the second counterclaim, arguing that Caraco changed the relevant law.  On July 9, 2008, this Court granted Corepharma's motion and vacated its Order dismissing the second counterclaim, reinstating the counterclaim and inviting a motion for summary judgment of noninfringement of the '013 patent.  On August 1, 2008, Corepharma filed the instant motion for summary judgment.

## ANALYSIS

### I. Legal Standards

#### A. Rule 56 Motion for Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**II.    Corepharma's motion for summary judgment**

Corepharma moves for summary judgment of noninfringement of the '013 patent, contending that Shire has no evidence of infringement and cannot prove it. Corepharma relies primarily on the argument that judicial estoppel should preclude Shire from defeating the motion.

6

### A. Judicial estoppel

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 228 n.8 (2000). The Third Circuit has set forth three threshold requirements for a finding of judicial estoppel:

> [F]irst, the party in question must have adopted irreconcilably inconsistent positions; second, the party must have adopted these positions in 'bad faith'; and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient.

Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 (3d Cir. 2008).

#### 1. "Irreconcilably inconsistent positions"

The first requirement for a finding of judicial estoppel is that the party has adopted irreconcilably inconsistent positions. There are several ways in which Shire has adopted irreconcilably inconsistent positions: 1) the previous position that Corepharma's ANDA products do not infringe the '013 patent is inconsistent with the present position that Corepharma's ANDA products do infringe the '013 patent; 2) the previous statement to the Court that Shire has unconditionally promised not to assert that Corepharma's ANDA products infringe the '013 patent is inconsistent with the present arguments that Corepharma's ANDA products infringe the '013 patent; and 3) the previous statement to the Court that Shire's unconditional promise encompassed the product samples Corepharma gave Shire in April of 2006 is inconsistent with Shire's present use of evidence derived from those samples.

Shire concedes that these positions are "seemingly contradictory," but "not irreconcilably inconsistent." (Pl.'s Opp. Br. 1.) Shire offers two arguments in explanation: 1) it previously

7

gave only a "qualified concession of noninfringement based upon the limited knowledge it had as of September 1, 2006" (Pl.'s Opp. Br. 1); and 2) it relied on Corepharma's representations, and Corepharma has misrepresented the properties of its ANDA products.

        a.        <u>Was Shire's concession qualified?</u>

Shire's contention that it never gave an unqualified concession of noninfringement is itself irreconcilably inconsistent with the record. When it argued for dismissal of the second counterclaim, Shire told this Court that it had given Corepharma an <u>unconditional</u> covenant not to assert that the ANDA products infringed the '013 patent. In its brief in reply to the motion to dismiss, Shire devoted three pages to its "unconditional assertions of noninfringement." (Pl.'s Reply Br. 9-11, Docket Entry No. 51.) As quoted above, the reply brief quotes the January 16, 2007 letter Shire sent Corepharma, promising unconditionally not to sue "or otherwise assert, enforce, or hold Corepharma liable for infringement" of the '013 patent. (<u>Id.</u> at 9.)

Shire now argues that its unconditional covenant actually had conditions. Shire points to the qualifying language that it used when it argued for dismissal of the second counterclaim. Shire did, at points, state that its concession of noninfringement was based on the information that Corepharma had disclosed to Shire as of September 1, 2006. This, however, does not solve Shire's present problem: it told this Court several times that the covenant was unconditional. Shire is thus now arguing that, when it told the Court that it had made an unconditional covenant, there actually were conditions, and its statement that the covenant was unconditional was untrue. A party cannot defeat an argument for judicial estoppel by taking the position that some of its previous statements to the Court were untrue and some were true, and the Court should look to only those statements that it now contends were true.

8

Furthermore, for the sake of discussion, even if this Court were to overlook Shire's representation that its covenant was unconditional, its present position is still irreconcilably inconsistent with its position as qualified. Shire told the Court that it agreed not to assert infringement based on the product samples that Corepharma produced to it in April of 2006. (February 27, 2007 Hearing Tr. at 11:16-20.) Yet, in arguing against the present motion for summary judgment, Shire rests on the evidence in the declaration of Banakar, which itself rests entirely on the experimental work of Bugay using those very samples.

Banakar stated that, after this Court decided the issues of claim construction in March of 2008, he asked Shire's counsel to contract with a laboratory to have Raman spectroscopy performed on particles of the ANDA products. (Banakar Decl. ¶ 93.) Banakar's conclusions of infringement of the '013 patent rely on Bugay's analysis of the Raman data, particularly an "unsupervised spectral fitting" study that Bugay conducted. (Banakar Decl. ¶¶ 94, 105.) Banakar stated that the Raman data showed that two particles tested by Bugay had compositions which literally infringed the '013 patent. (Banakar Decl. ¶ 106.) Banakar does not offer evidence from any other sources to support his conclusion of infringement.

In April of 2008, Bugay states, Shire asked him to conduct the Raman spectroscopy analysis. (Bugay Supp. Report at 1, Chettih Decl. Ex. N.) Bugay identified the product samples he tested by lot number. (Bugay 7/23/08 Decl. ¶ 19.) The lot numbers he identified match the lot numbers Banakar identified as belonging to Corepharma's ANDA batches. (Banakar 7/23/08 Decl. ¶ 39.) The parties do not dispute that Bugay conducted his analysis on sample capsules that Corepharma provided to Shire in April of 2006. Shire's arguments for infringement of the '013 patent thus rely on analysis of the same ANDA samples that Shire told this Court it would

9

not use to assert infringement of the '013 patent.

Thus, even if this Court were to accept that Shire used qualifying language to limit its concession of noninfringement to its position on September 1, 2006, the qualifying language that Shire actually used does not make Shire's conduct consistent. When explaining the qualification to the Court at oral argument, Shire expressly included the April 2006 samples within the covenant. Thus, even accepting Shire's qualification argument, these actions are irreconcilably inconsistent.

At the end of oral argument on the motion to dismiss, this Court presented its decision, stating its understanding of Shire's position:

> The record reflects in various and sundry forms an indication by plaintiff, Shire Laboratories, that it will not and does not contend that the information disclosed by Defendant Corepharma both in its ANDA application and supplemental disclosures infringes the '013 patent. It has in the Court's view unequivocally indicated that pursuit of licensing and manufacturing of the product within those parameters would not, could not and does not constitute infringement of the '013 patent.

(February 26, 2007 Hearing Tr. 33:3-11.) The Court thus clearly stated that, in its view, Shire's covenant was "unequivocal" and that manufacture of the product as disclosed in the ANDA and supplemental disclosures "would not, could not and does not constitute infringement of the '013 patent." Shire did not object to the Court's understanding of its position at the time, nor has it since. It is only now, to defeat the instant motion, that Shire contends that its position differed from that stated by this Court.

Shire did include another qualification in its declaration to this Court: it stated that it would not be bound by its concession were Corepharma to change the product or the ANDA in a way that implicated the '013 patent. (February 27, 2007 Hearing Tr. at 11:21-12:6.) Shire has

10

not alleged that Corepharma has changed either the product or the ANDA.  Shire has not satisfied the conditions it set that might allow it to escape its unconditional commitment.

       b. <u>Did Shire rely on misrepresentations of the properties of the ANDA products?</u>

  Shire justifies its change in position with the allegation that it had previously relied upon Corepharma's representations that the ANDA products contained homogeneous noninfringing particles, and that it was only because of post-Markman expert discovery that it found out that the particles were, in fact, heterogeneous.  There is no question that Bugay's study of the samples did produce evidence that the products contain particles of heterogeneous composition.  There is reason to question, however, whether Corepharma represented to Shire that its products contained only homogeneous noninfringing particles, as well as whether Shire actually believed that.  Furthermore, even if Corepharma made the representation and Shire believed it, there is reason to question whether Shire can reasonably claim that it based its litigation strategy on it.

  Shire makes its misrepresentation argument in two stages, first addressing representations made prior to its amending the Complaint, and then those made afterward.  As to the first stage, Shire points to a number of statements in the ANDA and Notice Letter and contends that, based upon those disclosures, Shire amended its Complaint so as to withdraw the claim for infringement of the '013 patent.  This assertion is so incredible that it does not merit scrutiny.  If pharmaceutical patent owners withdrew claims because notice letters contended that there is no infringement, there would be little Hatch-Waxman litigation.  Moreover, Shire received the Notice Letter and ANDA materials in April of 2008, prior to filing the initial Complaint.  If Shire's assertion were true, then these disclosures should have persuaded it not to file the claim

for infringement of the '013 patent in May.

Shire next points to representations Corepharma made during fact discovery, but, again, Shire's claim of reliance is unpersuasive. Shire cites the December 21, 2007 deposition testimony of Mukteeshwar Gande, Corepharma's formulator, as well as his May 2, 2007 declaration. (Banakar Decl. Exs. 27, 28.) Gande did state at his deposition that the composition of the particles is identical. (Gande 12/21/07 Dep. 103:6-8, Banakar Decl. Ex. 28.) His May 2, 2007 declaration does assert a "single formulation" and a "single manufacturing process" that conceivably might lead to an inference of homogeneous noninfringing particles. (Gande May 2, 2007 Decl. ¶ 16, Banakar Decl. Ex. 27.)

Shire's claim of reliance on these representations simply does not hold water. If homogeneity of the granules was essential to the determination of whether the ANDA products infringe the '013 patent, Shire could have had the granules analyzed in 2006, before it battled in Court to show that the ANDA products did not and could not infringe the '013 patent. The contention that a branded pharmaceutical manufacturer came to Court and argued forcefully for noninfringement because it trusted the notice letter and so never checked the composition of the product is too incredible to accept. Also unbelievable is the contention that Shire obtained samples of the product in April of 2006 but investigated infringement of only one of two Orange Book patents and was surprised when it stumbled onto information suggesting infringement two years later. Any explanation which has a sophisticated and experienced litigant engaging in such naive conduct seems rather farfetched. Nor does this Court find that Shire has been the innocent

dupe of generic swindlers.[1]

To the contrary, Shire made the tactical decision – very likely at the beginning of this case – not to assert infringement of the '013 patent. In May of 2006, Shire filed the Complaint in this case, alleging infringement of both the '570 and '013 patents. Shire served the Complaint on Corepharma on August 31, 2006 and, on the very next day, filed an Amended Complaint which did not include a claim for infringement of the '013 patent. Corepharma answered and included a counterclaim for noninfringement of the '013 patent. When Corepharma moved for judgment on the pleadings, Shire responded with the motion to dismiss this counterclaim for lack of subject matter jurisdiction. It appears to this Court that, from very early on in this case – perhaps as early as September 1, 2006 –, Shire made a tactical decision to avoid a judgment of noninfringement on the '013 patent. Shire's change of position now does not appear to be the result of Bugay's supposed "surprise discovery," as Shire claims, but rather the result of the Federal Circuit's Caraco decision which allowed Corepharma to ask that its counterclaim be

---

[1] While Shire contends that it believed that the particles were homogeneous until Bugay discovered that they were not in April of 2008, the evidence suggests that, at a minimum, they were on notice of contrary information at a much earlier date. Shire does not mention the position it took in July of 2007, when it opposed Corepharma's motion for summary judgment of noninfringement of the '570 patent, which indicates this. At that time, Shire's main point was that the ANDA products were composed of three separate units (sustained, enteric, and immediate). In its '570 summary judgment opposition brief, Shire discussed the evidence that it had regarding the particles in the ANDA products and concluded: "Corepharma's particles are far from uniform." (Pl.'s Opp. Br. 27, Docket Entry No. 102.) It characterized the particles as "highly irregular." (Id.) Shire even included microscopy photographs to show how irregular the particles were. (Id. at 28.) Despite its claims to the contrary, the record shows that, in July of 2007, Shire was arguing that the particles were not homogeneous; it is problematic to claim that it believed at that time that the ANDA products were composed of homogeneous noninfringing particles. Shire's claim that it believed the particles were homogeneous until it happened to discover otherwise in April of 2008 is certainly questionable.

13

reinstated.

        2.    *"Bad faith"*

The second requirement for a finding of judicial estoppel is that the party has adopted the inconsistent positions in bad faith. The seminal Third Circuit case on judicial estoppel states:

> A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate. And this is more than affront to judicial dignity. For intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.

Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953) (citations omitted). In Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996), the Third Circuit relied principally on the "fast and loose" formulation of the element of bad faith, but also employed as alternative formulations "attributable to intentional wrongdoing" and manifesting "intent to manipulate or mislead the courts." (Id. at 362, 365.)

Corepharma contends that Shire's use of inconsistent positions constitutes a bad faith effort to play fast and loose with this Court. Shire, in opposition, asserts that it has acted in good faith, and that its actions do not rise to a level of culpability sufficient for the application of judicial estoppel.

This Court disagrees with Shire and finds its conduct sufficient to merit the application of judicial estoppel. Contrary to its assertions, Shire has not changed positions in good faith. Shire's central argument blames its change of position on its recent "surprise discovery" of Corepharma's misrepresentations. This Court finds that Shire's claims that it relied on

14

misrepresentations by Corepharma are unjustified, and its claim of recent surprise discovery is not credible.  Rather, Shire appears to have made a tactical decision early in this litigation to attempt to forestall a judgment of noninfringement of the '013 patent.  On the basis of this decision, it asked this Court to dismiss Corepharma's second counterclaim for lack of subject matter jurisdiction, and it represented to this Court that it had given Corepharma an unconditional covenant not to assert infringement based on what it had obtained from Corepharma as of September 1, 2006.  Shire's motion was granted and the counterclaim dismissed.  It was only after a change in law that required reinstatement of the counterclaim that Shire asked Bugay to analyze the product samples Corepharma provided in April of 2006, which produced the evidence of infringement of the '013 patent that Shire has now presented to defeat Corepharma's summary judgment motion.  Shire has manifestly violated the commitment it made in open Court at oral argument on its motion to dismiss, and done so to obtain an advantage in this litigation.  It has clearly "played fast and loose with the courts."  To allow it to succeed in this effort would be to allow it to gain an advantage unfairly.

From these circumstances, this Court concludes that Shire has intended to manipulate the litigation to its advantage.  Its adoption of inconsistent positions manifests bad faith sufficient for a finding of judicial estoppel.

### 3. "Tailored to address the harm"

The third element required for a finding of judicial estoppel is that the remedy is tailored to address the harm and that no lesser sanction would be sufficient.  Corepharma does not address this element in its briefs.  Shire argues that judicial estoppel would not address the harms alleged by Corepharma.

15

Again, this Court disagrees with Shire. Allowing Shire to change position and use Bugay's Raman spectroscopy findings to defeat Corepharma's motion for summary judgment of noninfringement would reward manipulation and allow Shire to gain an unfair advantage. Shire's manipulation is a "threat to the integrity of the judicial process." Ryan, 81 F.3d at 361. Allowing Shire to use such tactics to defeat summary judgment would be a "miscarriage of justice" which can best be avoided through judicial estoppel. Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC, 337 F.3d 314, 319 (3d Cir. 2003). Moreover, "application of the doctrine of judicial estoppel is particularly appropriate in situations like this, where the party benefited from its original position." Delgrosso v. Spang & Co., 903 F.2d 234, 242 (3d Cir. 1990).

In Anjelino v. New York Times Co., 200 F.3d 73 (3d Cir. 1999), the Third Circuit affirmed a decision finding judicial estoppel under somewhat analogous facts. In that case, in the context of opposing a motion to dismiss, the plaintiffs had represented to the district court that they were ready for trial and needed no further discovery. Id. at 76. Later, plaintiffs changed position and asked for further discovery; the Magistrate Judge denied plaintiffs' request. Id. Plaintiffs appealed to the district court, which denied the appeal, stating that plaintiffs had made a "tactical decision" to forgo discovery to move the litigation forward, and, finding judicial estoppel, held plaintiffs to their original representation. Id. at 77.

On appeal, plaintiffs argued, as in the instant matter, that their change in position did not show any inconsistency, as their statement that no further discovery was needed was based on the assumption that neither party would engage in further discovery, which turned out not to be correct. Id. The Third Circuit held that the district court did not abuse its discretion when it held plaintiffs to their representation that no further discovery was needed in order to prevent them

from playing fast and loose with the courts.  Id. at 77-78.

Similarly, in the instant case, Shire made a tactical decision in 2006 to assert noninfringement of the '013 patent, but has now changed its mind and reversed course without credible explanation.  As in Anjelino, to prevent Shire from playing fast and loose with the judicial system, this Court holds Shire to its prior representation.

### B.     Noninfringement of the '013 patent

Because Shire has been judicially estopped from contesting infringement of the '013 patent, Corepharma's motion for summary judgment is unopposed.  This Court finds that Shire has no evidence and cannot prove that Corepharma has infringed the '013 patent.  Corepharma is entitled to judgment of noninfringement of the '013 patent as a matter of law.  The motion for summary judgment will be granted.

### CONCLUSION

For the reasons stated above, Corepharma has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Corepharma's motion for summary judgment on the second counterclaim is granted, and judgment on the second Counterclaim shall be entered in Corepharma's favor.

        s/ Stanley R. Chesler
       Stanley R. Chesler, U.S.D.J.

Dated: October 31, 2008